UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated, | ) ) ) **CLASS ACTION** |
| Plaintiff, | ) ) ) |
| v. | ) ) **C. A. No. 13-1887** |
| YAHOO! INC. | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Bill H. Dominguez, by counsel, hereby responds to and opposes the Motion for Summary Judgment filed on June 18, 2013 by Defendant Yahoo! Inc. (Doc. 14).

### I.   INTRODUCTION

This is a consumer class action challenging Yahoo!'s practice of sending unsolicited text messages to cellular telephone numbers owned by individuals who never consented to receive such texts. Plaintiff seeks certification of a class of similarly situated consumers[1] and an award of the remedies available under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (TCPA).

Yahoo! has prematurely moved for summary judgment based not on undisputed facts but on conclusory, self-serving allegations of its own employee (later contradicted by his own deposition testimony) by which it seeks to preemptively dismiss the case. Defendant's inflammatory approach only emphasizes the weakness of its legal position. Far from being the

---

[1]   By Order entered August 16, 2013, the Court set the deadline for Plaintiff to move for class certification to a date thirty days after the close of discovery. (Doc. 29).

1

"lawyer-driven[2] attempt to twist facts" that Yahoo! calls it (Def. Mem. at 1), the facts of this case, described below and in the accompanying Declaration of Bill H. Dominguez, are so outrageous that not even the most imaginative attorney could make it up.

For the reasons that follow, the Motion should be denied.

## II.     BACKGROUND

In support of this Opposition, Plaintiff submits the accompanying Response to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment; Statement of Additional Material Facts in Opposition to Defendant's Motion For Summary Judgment; the Declaration of Plaintiff Bill H. Dominguez in Support of His Opposition to Defendant's Motion for Summary Judgment (Dominguez Dec.); the deposition of Ajay Gopalkrishna, Senior Product Manager for Yahoo! Anti-Spam and Delivery, Defendant's Rule 30(b)(6) designee[3] (Gopalkrishna Dep.);[4] and, the Declaration of Randall A. Snyder (Snyder Dec.). Those submissions show the following.

---

[2]     Yahoo! is apparently fond of *ad hominem* attacks on plaintiffs' attorneys. In another recent TCPA case, Yahoo! also filed an early motion for summary judgment on the same stock defense that there was no automatic telephone dialing system. The introductory paragraph to its memorandum is essentially identical, labeling the case as "a lawyer-driven strike suit." *See Sherman v. Yahoo! Inc.*, C.A. No. 13-41 (S.D. Cal.), Doc. 9-1 at p. 5 of 15, filed June 3, 2013. As of the filing of this Opposition, the dockets of the *Sherman* case show no decision yet having been made on the summary judgment motion.

[3]     Yahoo! relied solely on a Declaration from Mr. Gopalkrishna (Doc. 14-1) in support of its Motion for Summary Judgment. Yahoo! also designated Mr. Gopalkrishna under Rule 30(b)(6) to testify concerning the topics listed in paragraphs 1-11 of the Court's Order dated August 16, 2013 (Doc. 28). However, Mr. Gopalkrishna testified that he never really had any direct involvement with Yahoo!'s e-mail SMS alert service. Gopalkrishna Dep. at 17:6-24, 18:1-22.

[4]     The Gopalkrishna Deposition, with portions redacted per Defendant's confidentiality designations, is attached to this Memorandum as Exhibit A. The unredacted deposition transcript and exhibits are being filed under seal pursuant to the Protective Order entered October 25, 2013 (Doc. 31).

A.     **Facts as to Plaintiff Bill Dominguez**

The material facts relevant to Plaintiff Dominguez's claim under the TCPA and his opposition to Defendant's Motion for Summary Judgment, including specific references to the parts of the record that support the facts, are set forth in detail in Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment, Plaintiff's Statement of Additional Material Facts in Opposition to Defendant's Motion For Summary Judgment, and Plaintiff's Declaration. Those facts are summarized below.

Plaintiff purchased a Samsung Gravity smart phone from a T-Mobile store in Philadelphia, Pennsylvania in late December, 2011. The telephone number assigned to his new phone was a telephone number that he had never had before. He learned later that the phone number had been previously held by a Jose Gonzalez, an individual he did not know.

Shortly after purchasing the new phone, Plaintiff began to receive unsolicited text messages from Yahoo! advising him that he had received an e-mail. The content of the messages generally advertised certain products or invited Plaintiff to sign up for some service. All the messages instructed Plaintiff to "Read It: http://m.yahoo.com/mail." Plaintiff has never had an email account with Yahoo! and did not sign up for any form of text message notification service through Yahoo!.

According to the records of T-Mobile, the first such text arrived at 8:04:56 a.m. on December 29, 2011. Those records show that Plaintiff's phone was sent 21 texts throughout that day. Plaintiff continued to receive text messages from Yahoo! many times throughout the day and night. For example, on September 9, 2012, the T-Mobile records show that Plaintiff's phone received 189 texts, beginning at 2:52:46 a.m. and concluding at 11:37:05 p.m.; on November 3, 2012, the T-Mobile records show that Plaintiff's phone received 71 texts, from 12:09:34 a.m.

3

through 11:44:12 p.m.; on January 29, 2013, the T-Mobile records show that Plaintiff's phone received 48 texts from 12:05:00 a.m. through 11:46:19 p.m.

Yahoo! finally stopped the texting on May 29, 2013 at 12:05:01 p.m., approximately seven weeks after the filing of this lawsuit. By that time, the T-Mobile records show that Plaintiff had received 27,809 unsolicited text messages, or an average of roughly 54 per day.

Plaintiff eventually began to document the text messages from Yahoo! and has taken photographs of approximately 8,480 of the text messages sent from Yahoo! to his cell phone. The photographs, and the T-Mobile records, show that text messages were sent from numbers that appear on Plaintiff's cell phone as 92000, 92466 or 92500. The numbers, known as "short codes," are registered to Yahoo! by the Common Short Code Association.

Plaintiff never consented to the receipt of the text messages sent by Yahoo! and Yahoo! has no record that Plaintiff ever consented to receive text messages.

Plaintiff attempted many times to stop the text messages sent by Yahoo!, all without success. On a number of occasions, Plaintiff responded to the text messages by texting back the words "stop" or "help," which he had been told would stop the texts, and which had worked for him in response to unwanted texts from other companies. Instead of stopping the texts, however, Yahoo! texted back an immediate, automatic reply in the nature of asking Plaintiff to sign in with a Yahoo id password, or stating that "Unfortunately we were unable to understand your request. Please try again."

In September 2012, Plaintiff contacted the Federal Communications Commission (FCC) to get assistance about how to stop the text messages. Plaintiff spoke with a representative named Kevin, who advised him, before filing a complaint with the FCC, to try to resolve the problem by contacting Yahoo! directly to stop the texting, and Kevin provided Plaintiff with

telephone numbers for Yahoo!.  Plaintiff then telephoned Yahoo! and spoke to a representative named Chad, who gave his identification number as 143638.  Chad suggested that Plaintiff try texting the word "Help" to Yahoo!'s number 92466, which he did, but that did not stop the text messages.

Plaintiff again telephoned Yahoo! and spoke to a woman named Denise, and explained the problem with the unsolicited text messages.  Denise responded that there was nothing that could be done to stop the texts unless the former owner of the telephone number accessed the password-protected account and authorized Yahoo! to stop the messages.  Plaintiff then asked to speak with a supervisor.  The supervisor, who identified himself as Castro, told Plaintiff the same thing – that the unsolicited text messages would only stop if the former owner of the account so authorized.  Castro stated that "As far as Yahoo is concerned, that number will always belong to Jose Gonzalez."  Since Plaintiff did not know the whereabouts of the former owner of the telephone number, Plaintiff suggested that litigation might be his only option.  Castro replied "so sue me."  Plaintiff then asked to speak to Castro's supervisor. Castro at first resisted letting Plaintiff speak to his supervisor but eventually referred Plaintiff to a person named Jessie, who repeated Yahoo!'s position that only the former owner of the telephone number could authorize Yahoo! to stop texting the messages.[5]

Plaintiff again contacted the FCC to see if they could help, and again spoke to the representative named Kevin.  Kevin called Yahoo! himself with Plaintiff on the line, and Plaintiff could hear Kevin's side of the conversation.  He asked the Yahoo! representative to stop

---

[5] Yahoo! has admitted that, even though it had the capacity to do so, it never implemented a method for someone in Plaintiff's position, who never authorized the text messages, to stop the Email SMS Service. Gopalkrishna Dep.at 107:13-17 ("that particular functionality, and as I understand it, never got implemented."); *Id*. at 108:2-21.

the texting. Kevin told Plaintiff that the Yahoo! representative repeated the company's position that Yahoo! did not have to stop the texts.

Plaintiff filed two complaints with the FCC relating to the text messages, submitted on September 11, 2012, and September 28, 2012. Plaintiff also filed a complaint concerning Yahoo!'s texting with the Federal Trade Commission on September 11, 2012.

None of Plaintiff's many efforts to get Yahoo! to cease the texting was successful. Indeed, even after Plaintiff's lawsuit was filed and the Complaint served upon Yahoo!, it still took until late May 2013 for Yahoo! to finally stop texting the Plaintiff.

**B.      Facts as to Yahoo!'s Email SMS Service**

The thousands of text messages sent by Yahoo! to Mr. Dominguez were admittedly sent via what Yahoo! calls its Email SMS[6] Service. (Def. Mem. at 7). The record accompanying this Memorandum demonstrates that Yahoo!'s system for providing mobile text messaging services is an automatic telephone dialing system (ATDS) within the meaning of the TCPA. Snyder Dec. ¶¶ 8, 62-71.

Yahoo!'s representative testified, when asked if the text messages are sent out automatically by the Yahoo! system, responded, "It is, yes, it is a software program." Gopalkrishna Dep. at 71:20-72:8. When he was asked if it is correct that when an email comes into the system, there's nobody from Yahoo! or a person that has to send the email as a text

---

[6] SMS is more commonly known as text messaging. SMS is defined as a communications system and method designed to enable an individual cellular telephone subscriber to send, or originate, a short text message communication (typically no more than 160 characters) from his or her cellular telephone to another individual subscriber's cellular telephone that is the intended destination of the message, *i.e.*, the message recipient. SMS text messages are sent individually from one subscriber to another using a cellular telephone number as the destination address of the message. The message sender's cellular telephone number is preserved as part of the message at the destination cellular telephone where the message is received so that the message recipient knows the cellular telephone number of the message sender. Snyder Dec. ¶¶ 9-10.

6

message, he responded, "Correct. Yes." Gopalkrishna Dep. 72:20-73:4. Clearly, the witness testified that Yahoo!'s text messaging service is a computerized system that automatically sends text messages to the cellular telephone numbers of subscribers who have registered for the service.

The witness also testified that Yahoo!'s system stores cellular telephone numbers to be called, Gopalkrishna Dep. at 52:8-15, 53:4-54:8, and that it has the capacity to and does in fact send text messages without human intervention. Gopalkrishna Dep. at 70:14 – 73:17. The system is designed to generate text messages in sequence pursuant to a "queuing" system based on the order in which the emails have arrived. *Id.* at 94:20-24, 95:1-13.

### III.  LEGAL STANDARD

A district court should grant a motion for summary judgment only if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Federal Rule 56 mandates the entry of summary judgment only against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23 (quoting Fed. R. Civ. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. The movant may discharge his burden by " 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non[-]moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970).

### IV.  ARGUMENT

**A.**  **The Telephone Consumer Protection Act**

The TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> ...
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. § 227(b)(1)(A)(iii).

> (a) Definitions
> As used in this section—
>   (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>     (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>     (B) to dial such numbers

8

47 U.S.C. § 227(a)(1).

The purpose of the TCPA is to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S. Rep. No. 102–178, 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968. The TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. *Id.* at 2. The consumers complained that such calls are a "nuisance and an invasion of privacy." *Id.* The purpose and history of the TCPA demonstrate that Congress was trying to prohibit the use of an ATDS to communicate with others by telephone in a manner that would be an invasion of privacy. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009). The statute is a remedial one and is required to be construed to benefit consumers. *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 271 (3d Cir. 2013).[7]

The law was enacted in 1991, before the advent of text messaging. However, as the Ninth Circuit held in *Satterfield*, and the Third Circuit in *Gager*, the plain language and purpose of the TCPA support the conclusion that the use of an ATDS to make any call, regardless of whether that call is communicated by voice or text, is prohibited. 569 F.3d at 954 ("We hold that

---

[7] Defendant's cases cited in an attempt to limit the scope of the TCPA (Def. Mem. at 8) are not to the contrary. *Ryabyshchuck v. CitiBank (South Dakota) N.A.* involved only a single text message, unlike the thousands Defendant sent to the Plaintiff in this case. 2012 WL 5379143, at *1 (S.D. Cal. Oct. 30, 2012). Both *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012), and *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d, 514 (3d. Cir. 1998), address only jurisdictional issues and in no way support a limitation of TCPA coverage. *Mims,* 132 S. Ct. at 747 (noting that certiorari was granted in order to resolve a circuit split regarding jurisdictional issues). The ruling in *Mims* in fact abrogates *ErieNet*, further undermining Defendant's position. *Id.* at 753. Moreover, the Court in *Mims* explicitly references FCC guidance in describing the TCPA, something Defendant entirely fails to do in its Motion. *Id.* at 746.

a voice message or a text message are not distinguishable in terms of being an invasion of privacy");[8] 727 F.3d at 269 n.2.

**B.      Plaintiff Did Not Consent to Yahoo!'s Text Messages**

Defendant argues that Plaintiff's TCPA claim is not actionable because, Yahoo! alleges, the text messages were sent at the request of a previous user. (Def. Mem. at 7-11). That argument sidesteps the indisputable fact, a fact admitted by Yahoo!'s corporate representative,[9] that Plaintiff himself never consented to receive the texts.[10] As discussed above, the record is replete with evidence that not only did Plaintiff never consent to the texts, he did everything he could think of to stop them.

The Plaintiff's Declaration sets out in detail his numerous, and unsuccessful, attempts to stop the texts. Mr. Dominguez tried to stop the texts on his own by texting back the words "stop" or "help," which had been suggested to him as a way to stop the texts, and which in fact had worked before with respect to spam text messages from other companies. He sought the assistance of the FCC and the FTC. Neither was able to make the texts stop. Mr. Dominguez, as well as the FCC, telephoned customer service at Yahoo! and were told repeatedly that there was

---

[8]      *Satterfield* relied in part on FCC statements that the TCPA's prohibition on ATDSs "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls…." 569 F.3d at 954, quoting from *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003). The FCC's position was subsequently confirmed in subsequent rulemaking in 2004. *Id*. The court held that the FCC interpretation was reasonable and entitled to deference under *Chevron v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).

[9]      *See* Gopalkrishna Dep. at 64:7-10: "Q. Okay. You don't have any information at all that Mr. Dominguez, the plaintiff in this case, ever requested e-mail SMS service, correct? A. No, I don't have any information."

[10]     Even if Plaintiff's actions were somehow construed to have been an authorization (which construction would be wholly contrary to the remedial purposes of the statute), his subsequent actions undeniably show a revocation of any such consent. *See Gager*, 727 F.3d at 270.

nothing that could be done without the password belonging to the long-gone former Yahoo! email subscriber. Dominguez Dec. ¶ 16(a)-(g), Exhibits C and D.

Yahoo! cites to no authority[11] that would allow it infer consent and continue to send text messages to a former customer's cell phone after the cell number was reassigned, particularly after the new phone owner made so many repeated efforts to get Yahoo! to stop the texts. Indeed, the law is to the contrary. In *Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639-40 (7th Cir. 2012), the court held it irrelevant that a prior subscriber provided consent. "Consent to call a given number must come from its current subscriber…. a Customer's authority to give consent, and thus any consent previously given, lapses when Cell Number is reassigned." 679 F.3d at 641.

Yahoo!'s contention that Plaintiff's claim is not actionable under the TCPA must be rejected.

## C. The Text Messages at Issue Were Sent to Plaintiff by Yahoo! Using an ATDS

The main premise of Defendant's Motion is its contention that the text messages at issue were not sent using an ATDS. (Def. Mem. at 6). The Motion rests entirely on the Declaration of Ajay Gopalkrishna (Doc. 14-1). But the record developed to date, including the deposition testimony of Mr. Gopalkrishna that contradicts his earlier Declaration, shows that premise to be

---

[11] Defendant's cited cases are readily distinguishable, as they each involve a solitary "confirmation" text message sent in response to a consumer's unsolicited text, rather than the tens of thousands of text messages Yahoo! sent to Mr. Dominguez, an individual with no prior contact with Yahoo!. *Ryabyshchuck v. CitiBank (South Dakota) N.A*, 2012 WL 5379143, at *1 (S.D. Cal. Oct. 30, 2012); *Ibey v. Taco Bell Corp.,* 2012 WL 2401972, at *1 (S.D. Cal. June 18, 2012); *Emanuel v. Los Angeles Lakers, Inc.,* 2013 WL 1719035, at *1 (C.D. Cal. April 18, 2013). *See also Roberts v. Paypal, Inc.*, 2013 WL 2384242, at *3 (N.D. Cal. May 30, 2013) (distinguishing *Ryabyshchuck* and *Ibey* on the basis that a "confirmation" text in response to a consumer's text message is distinct from a text message sent after the consumer provides his or her phone number on a computer).

wrong or, at a minimum, presents a genuine issue of material fact. The record shows that the system that was used by Yahoo! in sending the text messages to Plaintiff is an ATDS within the meaning of the TCPA because it is equipment that has the capacity to store or produce numbers to be called using a random or sequential number generator, and to dial such numbers. 47 U.S.C. § 227(a)(1).

The facts underlying the conclusion that Yahoo!'s text message system uses an ATDS are set forth in the accompanying Declaration of Randall A. Snyder. Mr. Snyder is an expert in the fields of wireline and wireless telecommunications networking technology. He has been retained as a testifying or consulting expert in 65 cases regarding cellular technology, including 41 cases regarding Short Message Service (SMS, or test messaging) technology, and 33 cases regarding the TCPA and associated regulations. He has been retained as an expert by both plaintiffs and defendants in TCPA cases. Snyder Dec. ¶ 4.

Mr. Snyder reviewed Yahoo!'s description of its system and the Declaration and deposition of Yahoo!'s only witness on the issue, Mr. Gopalkrishna. Snyder Dec. ¶ 3. Mr. Snyder concluded that Yahoo!'s system used to send text messages to Plaintiff is indisputably an ATDS. Snyder Dec. ¶¶ 8, 62-71. Yahoo!'s system has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers. Snyder Dec. ¶¶ 64, 71. Yahoo!'s system does store cellular telephone numbers to be called. Snyder Dec. ¶¶ 64-65, 70-71. Yahoo!'s system has the capacity to dial cellular telephone numbers, *i.e.*, send text messages, without human intervention. Snyder Dec. ¶¶ 66, 71. Yahoo!'s system does in fact send text messages without human intervention. Snyder Dec. ¶¶ 67, 71.

The evidence that Yahoo!'s system is an ATDS finds support not only from Mr. Snyder's Declaration but also from the deposition testimony of Yahoo!'s corporate representative, Mr. Gopalkrishna. The witness admitted that the system stores cellular telephone numbers to be called, Gopalkrishna Dep. at 52:8-15, 53:4-54:8, and that it has the capacity to and does in fact send text messages without human intervention. Gopalkrishna Dep. at 70:14 – 73:17. The texts are generated in sequence pursuant to a computer queuing system. *Id*. at 94:20-95:13.

Defendant's Motion avoids bringing to the Court's attention a number of cases that have considered, and rejected, arguments similar to what Defendant raises in its Motion. For example, in a seminal decision overturning summary judgment entered for the defendant, the Ninth Circuit methodically analyzed the statutory definition. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d at 951 (TCPA's "clear language mandates that the focus must be on whether the equipment has the ***capacity*** to store 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.") (emphasis in original).[12] *See also Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (relying on FCC's definition of an ATDS).

## V.  CONCLUSION

Despite Defendant's characterization, this case is far from novel. Plaintiff asserts a simple, straightforward claim under the TCPA that is fully in line with the remedial purposes of the statute as interpreted by this Circuit.

The record shows that thousands of text messages were sent to Plaintiff's cellular telephone by Yahoo! with an ATDS as that term is defined by the statute, a system that Yahoo!'s

---

[12] In finding a genuine issue of material fact with regard to whether the equipment at issue was an ATDS, *Satterfield* relied on the opinion of Mr. Snyder, Plaintiff's expert in this case. 569 F.3d at 951.

own witness testified had the capacity to and did in fact store or produce cellular telephone numbers to be sent text messages automatically, in sequence, without human intervention. Plaintiff was never a Yahoo! subscriber, never asked for the Yahoo! Email SMS Service and instead tried every way he could to stop the texting.  Yahoo! had the ability to stop the texting but its engineers never implemented such a process.  Instead, it took almost two months after this lawsuit was filed before Yahoo! finally stopped texting the Plaintiff.

For all the reasons discussed above, Plaintiff Bill H. Dominguez respectfully requests that Defendant's Motion for Summary Judgment be denied.

Dated:  December 20, 2013            Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**


By:     */s/ David A. Searles*
        JAMES A. FRANCIS
        DAVID A. SEARLES
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, PA  19110

        *Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, I caused a true and correct copy of the foregoing to be served upon the following as indicated:

*Via electronic mail through the Court's ECF system and hand-delivery:*
Brian T. Feeney
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103

*Via electronic mail through the Court's ECF system and overnight delivery:*
Ian C. Ballon
Lori Chang
GREENBERG TRAURIG, LLP
1900 University Avenue
5th Floor
East Palo Alto, CA 94303

Dated: December 20, 2013        *s/ David A. Searles*
                                David A. Searles