UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>YAHOO!, INC.<br><br>            Defendant. | CLASS ACTION<br><br><br><br>C. A. No. 13-1887 |

PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT
OF UNDISPUTED FACTS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

      Plaintiff Bill H. Dominguez, pursuant to Federal Rule of Civil Procedure 56 and the Court's Procedures for Civil Cases, ¶ C(2), (3), submits this response to Defendant's Statement of Undisputed Facts in Support of Motion for Summary Judgment.

      1.    Denied. Yahoo! used an Automatic Telephone Dialing System (ATDS) within the meaning of the Telephone Consumer Protection Act (TCPA) to send text messages to Plaintiff. The Federal Communications Commission (FCC) has held that prohibitions under the TCPA apply equally to both voice calls and SMS text message calls to cellular telephone numbers. The FCC has also held that prohibitions under the TCPA apply to stored lists of telephone numbers as well as random or sequentially generated numbers. Yahoo!'s system is a computerized application that stores cellular telephone numbers in a list for use as a destination address to send automated text messages, which Yahoo! automatically sends to cellular subscribers without human intervention. Yahoo!'s equipment has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers, and did in fact store a list of cellular telephone numbers to

1

be called.  Yahoo!'s equipment has the capacity to store and dial cellular telephone numbers and send text messages without human intervention, and did in fact store and dial such numbers and send text messages without human intervention.  Declaration of Randall A. Snyder (Snyder Dec.), ¶¶ 8, 62-71.

The records of the text messages sent by Yahoo! to Plaintiff demonstrate that the texts were generated automatically and without human intervention.  Over a period of more than 17 months, the texts were sent to Plaintiff by Yahoo! daily, at an average of roughly 54 a day, at all hours of the day and night.  When Plaintiff attempted periodically to stop the texting by texting back the word "stop" or "help," Yahoo!'s equipment instantaneously and automatically generated an immediate, generic response in the nature of asking Plaintiff to sign in with a Yahoo ID password, or stating that "Unfortunately we were unable to understand your request. Please try again."  The instantaneous, automatic texts from Yahoo! in reply to Plaintiff's texts attempting to stop Yahoo!'s texts demonstrate that the texts were sent by Yahoo! using an ATDS, and without human intervention.  Declaration of Bill H. Dominguez in Support of Opposition to Motion for Summary Judgment (Dominguez Dec.), ¶¶ 9-12, 16.

Yahoo!'s Rule 30(b)(6) corporate representative confirmed that the text messages were sent to Plaintiff through an automatic system without human intervention on Yahoo!'s part. Deposition of Ajay Gopalkrishna (Gopalkrishna Dep.) at 71:2 -73:14.  The witness also confirmed that Yahoo!'s system stored the cellular telephone numbers to be called. Gopalkrishna Dep. at 52:8-11. 53:4-54:8.

2. Denied.  The text messages were not "forwarded."  The text messages were sent through the use of an ATDS.  Opting in to receive text messages by use of a desktop Internet website form provides no way to ensure that the user who entered the cellular telephone number

is truly authorized to "opt-in" to a particular application.  If the individual who submitted some information on a desktop website form (e.g., the required cellular telephone number) is not truly the cellular subscriber, then the cellular subscriber using the telephone number will receive unknown text messages.  In such an instance, the actual cellular subscriber receives unauthorized and unwanted "mobile-terminated" text messages and may provide no consent to receive such text messages; however, the damage is already done.  Snyder Dec. ¶ 21.

Yahoo! has admitted there is no way for someone in Plaintiff's position, who never authorized the text messages, to stop the Email SMS Service.  Gopalkrishna Dep. at 107:13-17 ("that particular functionality, and as I understand it, never got implemented.").  This was so even though it would have been possible for Yahoo!'s engineers to have implemented the stopping of the messages; they just did not do so.  Gopalkrishna Dep. at 108:2-21.

3. Denied.  Plaintiff did not affirmatively sign up for the Email SMS Service. Gopalkrishna Dep. at 64:7-22, 65:1-10; Dominguez Dec. ¶ 8.  Nonetheless, Plaintiff was sent thousands of text messages from Yahoo!, despite his many attempts to have Yahoo! stop the texts.  Dominguez Dec. ¶¶ 6-7, 9-13, 16.

Plaintiff received the texts even though he had not signed up for the Email SMS Service. Because the individual who submitted information on a desktop website form was not truly the cellular subscriber at the time of the texts Yahoo! sent to Plaintiff, then the cellular subscriber using the telephone number, i.e., the Plaintiff, received unknown text messages.  Thus, Plaintiff received unauthorized and unwanted "mobile-terminated" text messages without having consented to receive such text messages.  Snyder Dec. ¶¶ 21, 37, 45, 51.

4. Denied.  Plaintiff did not provide his cell phone number to Yahoo!.  Gopalkrishna Dep. at 64:7-65:10; Dominguez Dec. ¶ 8.  Plaintiff did not request the Email SMS Service.

3

Dominguez Dec. ¶ 8. Nonetheless, Plaintiff was sent thousands of text messages from Yahoo!, despite his many attempts to have Yahoo! stop the texts. Dominguez Dec. ¶¶ 6-7, 9-13, 16.

Plaintiff received the texts even though he had not signed up for the Email SMS Service. Because the individual who submitted information on a desktop website form was not truly the cellular subscriber at the time of the texts Yahoo! sent to Plaintiff, then the cellular subscriber using the telephone number, i.e., the Plaintiff, received unknown text messages. Thus, Plaintiff received unauthorized and unwanted "mobile-terminated" text messages without having consented to receive such text messages, and without any method to opt-out of receiving the text messages. Snyder Dec. ¶¶ 21, 37, 45, 53-54.

5. Denied. Plaintiff never elected to receive text messages from Yahoo!. Gopalkrishna Dep. at 64:7-22, 65:1-10; Dominguez Dec. ¶¶ 8, 15. Plaintiff received the texts even though he had not signed up for the Email SMS Service. Because the individual who submitted information on a desktop website form was not truly the cellular subscriber at the time of the texts Yahoo! sent to Plaintiff, then the cellular subscriber using the telephone number, i.e., the Plaintiff, received unknown text messages. Thus, Plaintiff received unauthorized and unwanted "mobile-terminated" text messages without having consented to receive such text messages. Snyder Dec. ¶¶ 21, 37, 45. Plaintiff attempted numerous times to stop the text messages. Dominguez Dec. ¶ 16.

6. Denied. Yahoo!'s SMS Mail Alerts is a computerized application that stores cellular telephone numbers in a list for use as a destination address to send automated text messages, which Yahoo! automatically sends to cellular subscribers without human intervention. Yahoo!'s equipment has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers, and did in

fact store a list of cellular telephone numbers to be called. Yahoo!'s equipment has the capacity to store and dial cellular telephone numbers and send text messages without human intervention, and did in fact store and dial such numbers and send text messages without human intervention. Snyder Dec. ¶¶ 8, 62-71.

Plaintiff received thousands of text messages from Yahoo! randomly, at all hours of the day and night. The vast majority of the texts related to advertised products or services. Dominguez Dec. ¶¶ 7, 9-12 and Exhibit A thereto; Snyder Dec. ¶ 30-32, 51.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

### PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Bill H. Dominguez submits this Statement of Additional Material Facts in Opposition to Defendant's Motion for Summary Judgment.

7.     Plaintiff purchased a Samsung Gravity smart phone from a T-Mobile store in Philadelphia, Pennsylvania in late December, 2011. Dominguez Dec. ¶ 3.

8.     The telephone number assigned to Plaintiff's new phone was a telephone number that had never been assigned to him before, the last four digits of which were 4361. Dominguez Dec. ¶ 4.

9.     Plaintiff learned later that the phone number had been previously held by a Jose Gonzalez. Plaintiff has never met Jose Gonzalez and has no knowledge concerning his whereabouts. Dominguez Dec. ¶ 5.

10.    Shortly after purchasing the new phone, Plaintiff began to receive unsolicited text messages from Yahoo! advising him that he had received an e-mail. Dominguez Dec. ¶ 6.

11. The content of the messages generally advertised certain products or invited Plaintiff to sign up for some service. All the messages instructed Plaintiff to "Read It: http://m.yahoo.com/mail." Dominguez Dec. ¶ 7, Exhibit A.

12. Plaintiff has never had an email account with Yahoo! and did not sign up for any form of text message notification service through Yahoo!. Gopalkrishna Dep. at 64:7-22, 65:1-10; Dominguez Dec. ¶ 8.

13. According to the records of T-Mobile, the first such text arrived at 8:04:56 a.m. on December 29, 2011. Those records show that Plaintiff's phone was sent 21 texts throughout that day. Dominguez Dec. ¶ 9.

14. Plaintiff continued to receive text messages from Yahoo! many times throughout the day and night. As examples: on September 9, 2012, the T-Mobile records show that Plaintiff's phone received 189 texts, beginning at 2:52:46 a.m. and concluding at 11:37:05 p.m.; on November 3, 2012, the T-Mobile records show that Plaintiff's phone received 71 texts, from 12:09:34 a.m. through 11:44:12 p.m.; on January 29, 2013, the T-Mobile records show that Plaintiff's phone received 48 texts from 12:05:00 a.m. through 11:46:19 p.m. Dominguez Dec. ¶¶ 10-11.

15. Yahoo! finally stopped the texting on May 29, 2013 at 12:05:01 p.m., approximately seven weeks after the filing of this lawsuit. By that time, the T-Mobile records show that Plaintiff had received 27,809 unsolicited text messages, or an average of roughly 54 per day. Dominguez Dec. ¶ 12.

16. Plaintiff has taken photographs documenting approximately 8,480 of the text messages sent from Yahoo! to his cell phone. The photographs show that text messages were sent from numbers that appear on his cell phone as 92000, 92466 or 92500. Dominguez Dec. ¶¶

6

13-14. Those numbers, known as "short codes," are registered to Yahoo! by the Common Short Code Association as a mobile content provider. Snyder Dec. ¶ 32, Exhibit C.

17. Plaintiff never consented to the receipt of the text messages sent by Yahoo! Dominguez Dec. ¶ 15.

18. Yahoo! has no record that Plaintiff ever consented to receive text messages. Gopalkrishna Dep. at 64:7-22, 65:1-10.

19. Plaintiff attempted many times to stop the text messages sent by Yahoo!. Dominguez Dec. ¶ 16.

20. On a number of occasions, Plaintiff responded to the text messages by texting back the words "stop" or "help," which he had been told would stop the texts, and which had worked for him in response to unwanted texts from other companies. Instead of stopping the texts, however, Yahoo! texted back an immediate, automatic reply in the nature of asking Plaintiff to sign in with a Yahoo id password, or stating that "Unfortunately we were unable to understand your request. Please try again." Dominguez Dec. ¶ 16(a) and Exhibit B.

21. In September 2012, Plaintiff contacted the Federal Communications Commission (FCC) to get assistance about how to stop the text messages. Plaintiff spoke with a representative named Kevin, who advised him, before filing a complaint with the FCC, to try to resolve the problem by contacting Yahoo! directly to stop the texting, and Kevin provided Plaintiff with telephone numbers for Yahoo!. Dominguez Dec. ¶ 16(b).

22. Plaintiff then telephoned Yahoo! and spoke to a representative named Chad, who gave his identification number as 143638. Chad suggested that Plaintiff try texting the word "Help" to Yahoo!'s number 92466, which he did, but that did not stop the text messages. Dominguez Dec. ¶ 16(c).

23.     Plaintiff again telephoned Yahoo! and spoke to a woman named Denise, and explained the problem with the unsolicited text messages. Denise responded that there was nothing that could be done to stop the texts unless the former owner of the telephone number accessed the password-protected account and authorized Yahoo! to stop the messages. Plaintiff then asked to speak with a supervisor. The supervisor, who identified himself as Castro, told Plaintiff the same thing – that the unsolicited text messages would only stop if the former owner of the account so authorized. Castro stated that "As far as Yahoo is concerned, that number will always belong to Jose Gonzalez." Since Plaintiff did not know the whereabouts of the former owner of the telephone number, Plaintiff suggested that litigation might be his only option. Castro replied "so sue me." Plaintiff then asked to speak to Castro's supervisor. Castro at first resisted letting Plaintiff speak to his supervisor but eventually referred Plaintiff to a person named Jessie, who repeated Yahoo!'s position that only the former owner of the telephone number could authorize Yahoo! to stop texting the messages. Dominguez Dec. ¶ 16(d).

24.     Yahoo! has never implemented a method for someone in Plaintiff's position, who never authorized the text messages, to stop the Email SMS Service. Gopalkrishna Dep. at 107:13-17 ("that particular functionality, and as I understand it, never got implemented."). This was so even though it would have been possible for Yahoo!'s engineers to have implemented the stopping of the messages; they just did not do so. Gopalkrishna Dep. at 108:2-21.

25.     Plaintiff again contacted the FCC to see if they could help, and again spoke to the representative named Kevin. Kevin called Yahoo! himself with Plaintiff on the line, and Plaintiff could hear Kevin's side of the conversation. He asked the Yahoo! representative to stop the texting. Kevin told Plaintiff that the Yahoo! representative repeated the company's position that Yahoo! did not have to stop the texts. Dominguez Dec. ¶ 16(e).

26. Plaintiff filed two complaints with the FCC relating to the text messages, which the FCC assigned as user complaint nos. 12-T01029327-1, submitted on September 11, 2012, and 12-T01042769-1, submitted September 28, 2012. Dominguez Dec., ¶ 16(f), Exhibit C.

27. Plaintiff filed a complaint concerning Yahoo!'s texting with the Federal Trade Commission on September 11, 2012. Dominguez Dec. ¶ 16(g), Exhibit D.

28. The text messages sent by Yahoo! to Plaintiff's cellular telephone were sent by an Automatic Telephone Dialing System (ATDS). Snyder Dec. ¶¶ 8, 62-71.

29. Yahoo! has admitted that the text messages were sent automatically and not manually or by human intervention. Gopalkrishna Dep. at 71:20-72:8, 72:20-73:4.

30. Yahoo!'s system has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers. Snyder Dec. ¶¶ 64, 71.

31. Yahoo!'s system does store cellular telephone numbers to be called. Snyder Dec. ¶¶ 64-65, 70-71; Gopalkrishna Dep. at 52:8-15, 53:4-54:8.

32. Yahoo!'s system has the capacity to and does in fact send text messages without human intervention. Snyder Dec. ¶¶ 66-67, 70-71; Gopalkrishna Dep. at 70:14 – 73:17.

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendant's Motion for Summary Judgment.

Dated:  December 20, 2013

                Respectfully submitted,
                **FRANCIS & MAILMAN, P.C.**
           By:  */s/ David A. Searles*
                JAMES A. FRANCIS
                DAVID A. SEARLES
                Land Title Building, 19th Floor
                100 South Broad Street
                Philadelphia, PA  19110

                *Attorneys for Plaintiff and the Class*