### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated,** | **CLASS ACTION** |
| **Plaintiff,** | |
| **v.** | **C. A. No. 13-1887** |
| **YAHOO! INC.** | |
| **Defendant.** | |

### <u>DECLARATION OF RANDALL A. SNYDER</u>

I, Randall A. Snyder, hereby declare as follows:

1. My name is Randall A. Snyder. I am an adult over the age of 18 and a resident of the state of Nevada. I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

2. I am an independent telecommunications technology consultant and reside at 8113 Bay Pines Avenue, Las Vegas, Nevada, 89128. I have been retained by Francis & Mailman, P.C. in the matter *Dominguez v. Yahoo! Inc.*, 2:13-CV-01887-MMB (E.D. Pa.) to provide my expert opinions relating to technology described within the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the claims by Plaintiff that Yahoo! Inc. ("Yahoo!" or "Defendant") violated the TCPA. In particular, I have been asked to determine whether the Defendant employed equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; whether the Defendant, in fact, used such equipment; whether the Defendant employed equipment which has the capacity to dial telephone numbers without human intervention; whether the Defendant, in fact, dialed such numbers without human intervention; and

whether the equipment used by the Defendant was used to send unsolicited cellular text messages.

3. My opinions in this declaration are based on my knowledge, education, experience, training and my review of the following documents in this case: Complaint – Class Action: for sending unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (TCPA); Defendant's Motion for Summary Judgment; Separate Statement of Undisputed Facts in Support of Yahoo! Inc.'s Motion for Summary Judgment; Declaration of Ajay Gopalkrishna in Support of Yahoo! Inc.'s Motion for Summary Judgment (Exhibit A of Defendant's Motion for Summary Judgment); Reply in Support of Yahoo! Inc.'s Motion for Summary Judgment and in Response to Plaintiff's Opposition Pursuant to Rule 56(d); Yahoo! Inc.'s Proposed Order Requiring Discovery for Defendant's Motion for Summary Judgment; Order Requiring Discovery for Defendant's Motion for Summary Judgment; Yahoo! SMS Mail Alerts Product Overview (Bates Nos. YAHOO 0001 – Yahoo 0015); Yahoo! Mobile SMS Subscription Gateway Design Document (Bates Nos. YAHOO 0016 – Yahoo 0039); Yahoo – T-Mobile USA Services Agreement (Bates Nos. YAHOO 0077 – YAHOO 0113); Neustar Subpoena Response Letter (dated September 3, 2013); Common Short Code Association (CSCA) Campaign Account Recovery Summary for CSC 92500 (dated August 27, 2013); Common Short Code Association (CSCA) Invoices for CSC 92500 (dated August 27, 2013); Common Short Code Association (CSCA) Receipts for CSC 92500 (dated August 27, 2013); Common Short Code Association (CSCA) Order Records for CSC 92500 (dated August 29, 2013); photo images of Plaintiff's received text message (dated May 29, 2012; September 8, 2012 and November 12, 2012); T-Mobile USA call detail records for Plaintiff's cellular telephone phone, (215) 543-4361 (dated December 29, 2011 – June 4, 2013); T-Mobile USA Support Page – Spam Troubleshooting for 92000 short code range (dated July 11,

-2-

2013); Deposition of Ajay Gopalkrishna (dated October 18, 2013); Mobile Marketing Association, U.S. Consumer Best Practices for Messaging, Version 7.0 (dated October 16, 2012); Mobile Marketing Association, Global Code of Conduct (dated July 15, 2008); the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and regulations promulgated thereunder; the FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated October 16th, 1992; 2003 TCPA Order, 18 FCC, July 25, 2003; the FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated January 4th, 2008; the Appeal from the United States District Court for the Northern District of California, No. 07-16356, D.C. No. CV-06-02893-CW Opinion, filed June 19th, 2009; the FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated February 15th, 2012; and the FCC's Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling dated November 29, 2012.

4.   I have over 28 years of experience in telecommunications network and system architecture, engineering, design and technology. I am an expert in the fields of both wireline and wireless telecommunications networking technology. A copy of my *curriculum vitae* is attached to this Declaration. I have been retained as a testifying or consulting expert in 65 cases regarding cellular telecommunications technology, including 42 cases regarding Short Message Service ("SMS") technology and 36 cases regarding the TCPA and associated regulations. In addition, I have been retained as an expert by both plaintiffs and defendants in cases regarding the TCPA.

-3-

5.  I have taught many classes and seminars on both wireline and wireless telecommunication network technologies and have been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers ("IEEE"), the Personal Communication Society ("PCS"), and the Cellular Telecommunications and Internet Association ("CTIA") as an expert in telecommunication networks. I spent seven years developing standards within the American National Standards Institute's subsidiary organization, the Telecommunications Industry Association ("TIA"), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, I authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between wireline and wireless networks, which is a fully accredited national standard of the American National Standards Institute ("ANSI"). I am the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. These books have sold several thousand copies and were required reading for wireless engineers at AT&T Wireless and Motorola for several years. The latter book has also been relied upon and cited numerous times as a reference for various patents in the telecommunications industry. I have been issued 12 patents myself on telecommunications networking technology and currently have seven additional published patents pending. I have also authored several articles on telecommunications technology and have been quoted numerous times in industry trade publications. I have consulted for and been employed by many wireline and wireless telecommunications companies including McCaw Cellular, AirTouch, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Nextwave, MCI, Sprint and other

DECLARATION OF RANDALL A. SNYDER

telecommunications technology vendors and service providers. I was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology I designed while employed at Entriq, Inc. In addition, in 2002, I was co-founder of m-Qube, Inc., one of the first text message based mobile marketing companies in N. America. m-Qube founded and established the Mobile Marketing Association (see http://www.mmaglobal.com) which subsequently established the technology and methodology for the use of text message based short codes within N. America.

6.   I have been issued four patents on SMS technology, including the invention of short code technology, and my books have been cited in four additional issued patents on SMS technology. Still more detail, as well as details of publications that I have authored or co-authored within at least the past 10 years, are provided in my attached *curriculum vitae* (a true and correct copy of which is attached hereto as Exhibit H) along with a list of cases where I served as a testifying or consulting expert and my standard rate sheet. I am being compensated at the rate of $400 per hour for my study, analysis and testimony in this case.

## INTRODUCTION

7.   The TCPA prohibits unsolicited voice and text calls to cellular telephone numbers using an "automatic telephone dialing system" ("ATDS"), which the statute defines as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers." Additionally, it is my understanding that the Federal Communications Commission ("FCC") has issued further regulations that also define an ATDS as including the capacity to dial telephone

numbers from a provided list or database of telephone numbers without human intervention.

8. Based on my review of the relevant documents and the facts described above, it is my expert opinion that the text messages sent to the Plaintiff were sent using an ATDS as defined within the TCPA. Furthermore, it is my opinion that the Plaintiff did not expressly or knowingly consent to receive such text messages from Yahoo!. I base this opinion on my knowledge, experience, expertise, training and on the evidence I have reviewed.

**BACKGROUND**

9. The use of Short Message Service, more commonly known as "text messaging" in the U.S., has become ever-present. According to the Cellular Telecommunications and Internet Association ("CTIA"), as of December, 2012 there were 326.4 million cellular telephone subscriptions in the U.S. and approximately 2.19 trillion text messages sent anually.[1]

10. SMS is defined as a communications system and method designed to enable an individual cellular telephone subscriber to send, or originate, a short text message communication (typically no more than 160 characters) from his or her cellular telephone to another individual subscriber's cellular telephone that is the intended destination of the message, i.e., the message recipient. SMS text messages are sent individually from one subscriber to another using a cellular telephone number as the destination address of the message. The message sender's cellular telephone number is preserved as part of the message at the destination cellular telephone where the message is received so that the message recipient knows the cellular telephone number of the message sender.

11. Over the past several years many companies have emerged that provide what is known as

---

[1]See http://www.ctia.org/advocacy/research/index.cfm/aid/10323.

-6-

value-added text messaging services using SMS technology. These companies are technically referred to as Value Added Service Providers ("VASPs") and many of them are external entities to the cellular network operators. These VASPs provide a variety of text messaging services (i.e., SMS) that are not strictly peer-to-peer in the sense of subscriber-to-subscriber manual communications; rather, they are companies that use automated computer equipment to send and receive text messages using SMS to and from individual cellular telephone subscribers. Based on my review of the materials in this case, Yahoo! performs as a VASP when providing the "SMS Mail Alerts" text message service to it's Yahoo! Mail application users.

12. VASPs are typically in the business of creating and operating text message-based applications in order to develop and maintain some individualized communication with cellular telephone subscribers for commercial purposes. The automated computer equipment that these VASPs employ is used for a variety of text messaging applications, marketing campaigns and dialogs to communicate with cellular subscribers. Common applications are voting (the most popular example being the text message voting used to vote for contestants on the American Idol television program) as well as receiving news alerts, informative notifications, coupons and sports scores where short messages are sent to cellular subscribers on a regular basis.

13. Moreover, these VASPs employ equipment that has the ability to send any number of text messages to cellular telephone subscribers as well as receive individual text messages from those subscribers. Messages sent from the VASP to a cellular subscriber are termed "mobile-terminated" and messages sent from a cellular subscriber to a VASP are termed "mobile-originated."

DECLARATION OF RANDALL A. SNYDER

14. VASPs connect to the cellular carrier networks using internet-based connections and communications protocols. The primary protocol used is known as the Short Message Peer-to-Peer ("SMPP") protocol. SMPP is an internet-based communications protocol specifically designed for communications between a VASP and a cellular network's Short Message Service Center ("SMSC"). SMSCs are network entities that are maintained and controlled within the cellular carriers' networks and are the store and forward repositories for text messages to be both delivered to and sent from mobile subscribers.

15. VASPs' connections to the cellular network operators are internet connections and typically use a special number as the address by which cellular text messages are sent and received in order to communicate with cellular subscribers. All messages sent to a particular subscriber are delivered to that subscriber's "home" SMSC within the subscriber's home cellular network. Since VASPs are not mobile subscribers, they are not identified by a mobile telephone number; rather, VASPs use a special number as an originating address for short text messages sent to mobile subscribers. In most cases, this number is known as a "short code." A short code is a special and unique 5- or 6-digit number that is obtained from an independent agency, the Common Short Code Association ("CSCA"), wholly owned and operated by Neustar, Inc., that manages and assigns these number resources in the U.S. on behalf of the cellular network operators. Individual short code numbers are leased by the VASPs to run automatic mobile text messaging applications. These numbers are provisioned (i.e., programmatically stored) by the cellular network operators so that "mobile-originated" messages can be properly sent from cellular subscribers to the correct VASP platform applications. In some cases, VASPs agree to a special numeric address that acts just like a short code, but is not a number resource

DECLARATION OF RANDALL A. SNYDER

maintained independently by Neustar. This is especially true of VASPs providing automated text messaging applications enabled prior to 2004, at which time Neustar became the short code administrator.

16. The special numeric address value (short code or otherwise) is a virtual number and when provisioned (i.e., programmatically stored) in the cellular networks, must be associated with a computing platform identified by an internet protocol ("IP") address. In this way, "mobile-terminated" text messages can be sent from a particular VASP, identified by a particular IP address, to particular cellular networks for delivery to cellular telephone subscribers. The cellular subscribers see the associated special numeric address as the originating address of the message. Conversely, "Mobile-originated" text messages can be sent from a particular cellular subscriber to a VASP, using this special numeric address as the destination address of the message. The cellular networks subsequently send those text messages to the VASP using the IP address provisioned and associated with the special numeric address.

**OPT-IN**

17. "Opting-in" is a term that describes a method by which a cellular subscriber explicitly and expressly provides individual consent to inform a VASP that they are willing to receive text messages from the VASP for a specific text message application or promotion. Generally, consent is not broadly given for multiple commercial text message applications nor is it given in some "open-ended" fashion (i.e., without limitation) such that a cellular subscriber "opts-in" to receive any and all marketing or promotional text messages in perpetuity.

-9-

18. There are two reasons why express and formal "opt-in" techniques are used for automated commercial text messaging applications: (i) to enable cellular telephone subscribers to reliably provide knowing, voluntary, clear, unmistakable, explicit and express consent for a particular commercial text messaging program; and (ii) to inform the VASP that they are willing to incur appropriate text messaging charges for that application program.

19. The "opt-in" method requiring a "mobile-originated" text message to be sent by a cellular subscriber as a response to some "call to action" is a very reliable means for the VASP to obtain express and knowing consent to send application text messages to a cellular subscriber. This call to action requires that consumers respond by executing the initial cellular communication first so they can unmistakably and voluntarily provide express consent. Using this method, cellular subscribers must use their own cellular telephones to "opt-in" to a given text message application and the "opt-in" text message automatically contains the cellular telephone number of the cellular subscriber. This provides a very reliable express means for the VASP to ensure that the cellular subscriber "opting-in" is, in fact, the authorized cellular subscriber who wishes to receive text messages for that application.

20. Another common method to "opt-in" is by a cellular subscriber providing some indication of willingness to receive "mobile-terminated" text messages from the VASP by filling in a web-based form on a desktop computer or mobile Internet website. This is typically the case when the crux of a specific text message application is based on the VASP sending out "mobile-terminated" text messages to the cellular subscriber.

21. The "opt-in" method requiring a mobile-originated text message to be sent by a cellular subscriber as a response to a "call to action" is a much more reliable means of obtaining

-10-

_____
DECLARATION OF RANDALL A. SNYDER

express consent to receive text messages. This is because cellular subscribers must use their own cellular telephones to "opt-in" to a given text message application and the "opt-in" text message automatically contains the cellular telephone number of the cellular subscriber. This provides a very reliable means for the VASP to ensure that the cellular subscriber "opting-in" is, in fact, the authorized cellular subscriber that wishes to receive text messages for that application. Conversely, "opt-in" provided on a desktop Internet website form provides no way to ensure that the user who entered the cellular telephone number is truly authorized to "opt-in" to a particular application. If the individual who submitted some information on a desktop website form (e.g., the required cellular telephone number) is not truly the cellular subscriber, then the cellular subscriber using the telephone number will receive unknown text messages. In such an instance, the actual cellular subscriber receives unauthorized and unwanted "mobile-terminated" text messages and may provide no consent to receive such text messages; however, the damage is already done. For this reason, "opting-in" via cellular telephone is the most reliable and widely used method for text message applications in today's environment.

22. Every time a cellular subscriber "opts-in," the VASP records and stores the cellular subscribers' telephone numbers in a database or electronic list. The phone numbers are derived from incoming "mobile-originated" text messages received by the VASP or from information entered into an Internet application. The cellular telephone numbers need to be stored by the VASP for a given application for a variety of reasons. The application may be based primarily on "mobile-terminated" messages once a subscriber has consented, such as sending information alerts, or the application may be based on an ongoing dialog between the VASP and the cellular subscriber such as a series of trivia questions and responses.

23. Yahoo! is a company that provides mobile text messaging services to its Yahoo! Mail users. Based upon my knowledge, experience, expertise, training and the materials reviewed, Yahoo! is a Value Added Service Provider ("VASP") that operates an automated computer equipment system providing SMS-based applications that enable text message communications between those applications that are run on the system and cellular telephone subscribers. The "SMS Mail Alerts" application that Yahoo! developed and maintains is used to form a commercial relationship with cellular subscribers and to use the cellular networks and text messaging technology to form that relationship.

**THE MOBILE MARKETING ASSOCIATION ("MMA")**

24. The MMA is a global non-profit trade organization that issues codes of conduct and best practices for all companies engaged in mobile marketing and mobile commercial activities. As part of their function, they provide industry guidelines for commercial text messaging applications and programs. The MMA is the global authoritative organization providing best practices, guidelines, rules and instructions for all companies involved in communicating with cellular telephone subscribers using SMS-based text messaging technology. And, in fact, Yahoo! is a well-known member of the MMA and is clearly aware of the MMA's best practices, guidelines, rules and instructions.[2]

25. According to the MMA's Global Code of Conduct:

> **"Mobile Marketers ask for and obtain consent by obtaining an explicit opt-in from the user for all mobile messaging programs. This can be accomplished via an SMS or MMS opt-in process, a voice response, website registration, other MMA recognized methods or other legitimate methods.**

---

[2]See http://www.mmaglobal.com/member-center/members.

Declaration of Randall A. Snyder

**"Mobile Marketers must implement consent (opt-in) for a specific messaging program. Consent is not carried into other programs unless the user has consented to such communications either 1) when they consented to the initial program or 2) upon the commencement of a subsequent messaging program."[3]**

26. Furthermore, according to the MMA's U.S. Consumer Best Practices:

**"At all times, programs must be in accordance with applicable federal and state laws, rules and regulations."[4]**

**"Content providers must obtain opt-in approval from subscribers before sending them any SMS or MMS messages or other content from a short code."[5]**

**"When opt-in to a recurring program occurs via the web or other non-mobile point of origination, the content provider must obtain verification that the subscriber is in possession of the handset being opted-in to the service.**

**"For recurring standard rate programs, subscribers should indicate their willingness to participate in a program and receive messages from the program as follows:**

    **1. Subscriber initiates opt-in to a recurring Standard Rate Program by responding to a call to action (CTA):**

        **i.) Subscriber may send a Mobile Originated (MO) message from their handset to the short code.**

        **ii.) Subscriber may initiate opt-in from a web interface.**

        **iii.) Subscriber may initiate opt-in from a WAP interface.**

        **iv.) Subscriber may initiate opt-in from an IVR system."[6]**

27. In addition, the MMA provides clear best practices and instructions to enable cellular subscribers to "opt-out" of receiving any text messages from an automated application

---

[3]See http://www.mmaglobal.com/bestpractice, Code of Conduct for Mobile Marketing, p. 1.

[4]See http://www.mmaglobal.com/bestpractice, U.S. Consumer Best Practices, p. 7.

[5]See http://www.mmaglobal.com/bestpractice, U.S. Consumer Best Practices, p. 8.

[6]See http://www.mmaglobal.com/bestpractice, U.S. Consumer Best Practices, p. 8-9.

DECLARATION OF RANDALL A. SNYDER

program:

> **"After opt-in to a recurring program, a confirmation Mobile Terminating (MT) message must be sent to the subscriber containing, at minimum, the following information:**
>
> > a)  **Service description**
> >
> > b)  **Program Sponsor**
> >
> > c)  **Additional carrier costs (e.g. Msg&Data Rates May Apply)**
> >
> > d)  **Frequency of messaging**
> >
> > e)  **Customer support information (HELP)**
> >
> > f)  **Opt-Out information (STOP)"**[7]

28.  "Opting-out" is a term that describes a method by which a cellular subscriber explicitly and expressly revokes individual consent to inform a VASP that they are no longer willing to receive text messages from the VASP for a specific text message application.

29.  For "opting-out," the MMA mandates the following instructions to VASPs:

> **"Content providers must offer subscribers the opportunity to cancel the service at any time. The following rules govern program opt-out:**
>
> **"A subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program.**
>
> **"END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however, content providers should feature the word STOP in their advertising and messaging. Messaging content providers must process a stop message from a subscriber regardless of the keyword STOP's case sensitivity."**[8]

---

[7]See http://www.mmaglobal.com/bestpractice, U.S. Consumer Best Practices, p. 9.

[8]See http://www.mmaglobal.com/bestpractice, U.S. Consumer Best Practices, p. 10.

-14-

DECLARATION OF RANDALL A. SNYDER

**FACTS REGARDING THE PLAINTIFF**

30. On or about Thursday, December 29, 2011, the Plaintiff purchased a new cellular telephone and cellular subscription from T-Mobile USA. The Plaintiff's cellular telephone was a Samsung device running the Google Android operating system. The Plaintiff was assigned the cellular telephone number (215) 543-4361. Starting on or before September 8, 2012 and continuing through at least May 29, 2013, the Plaintiff began receiving unsolicited numerous text messages from the numeric short codes "92000" and "92500." A true and correct copy one of the messages is attached hereto as Exhibit A and reads:

> **Fr: 8p0jzr2kpfm-nxgu8u@slatelime.com S: The New iPad just**
> **sold for=?UTF8?Q?=24?=23 … Read It:**
> **http://m.yahoo.com/mail**

31. An analysis of T-Mobile USA call detail records for the Plaintiff's cellular telephone number from September 8, 2012 through May 29, 2013 reveals that, in fact, the Plaintiff received 12,997 such text messages from the short codes "92000" and "92500" between September 8, 2012 and May 29, 2013, an average of about 49 text messages per day for 264 days straight at all hours of the day and night (see Exhibit B, a date and time sorted version of T-Mobile USA text message detail records for Plaintiff's cellular telephone number (215) 543-4361).

32. Both short codes "92000" and "92500" are leased and registered to Yahoo! by the CSCA as a mobile content provider (Exhibit C).

33. ████████████████████████████████████████
████████████████████████████████████
█████████████████████████████████████
████████████████████████████████████████

-15-

34. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████

35. According to Mr. Ajay Gopalkrishna, Product Manager for Yahoo! Mail Anti-Spam and

Delivery, in his declaration (Exhibit E, "Gopalkrishna Decl."), stated, "Yahoo!'s Email

SMS Service was configured to automatically convert email messages into a format that

could then be forwarded [sent] to a user's wireless carrier (such as Verizon, AT&T, T-

Mobile and other similar companies), which in turn then sent an SMS message to the user's

mobile device." (Exhibit E, Gopalkrishna Decl., ¶6.) Moreover, he stated, "The SMS

message ultimately received by a user included a truncated version of the email

-16-

communication, including the identity of the sender, the subject line, and the body of the message up to a combined total of 140 characters…" (Exhibit E, Gopalkrishna Decl., ¶7.)

36. Mr. Gopalkrishna further stated that he, "…determined that the user of the account [the user maintaining a Yahoo! email account] associated with Plaintiff's mobile phone number created the account in March 2009, and that the user made an affirmative request to sign up for the Email SMS Service in [*sic*] at some time prior to June 2011, which is prior to the time plaintiff alleges that he was assigned that same phone number." (Exhibit E, Gopalkrishna Decl., ¶10.)

37. It is irrefutable that since the Plaintiff obtained his new mobile phone number in December, 2011, he was definitely not the individual nor the Yahoo! Mail account user who programmatically assigned his mobile phone number, (215) 543-4361, to the "SMS Mail Alerts" application program. In fact, Mr. Gopalkrishna states, "I understand that in this case, the plaintiff alleges that he bought a new phone and was assigned a new phone number, 215-543-4361, which previously had been held by someone named Jose Gonzalez." (Exhibit E, Gopalkrishna Decl., ¶9.)

38. Mr. Gopalkrishna also admitted in his deposition (see Exhibit F, "Gopalkrishna Dep.") that the "SMS Mail Alerts" text messages are not sent out manually. When asked if these email alert text messages are sent out automatically by the Yahoo! system, Mr. Gopalkrishna responded, "It is, yes, it is a software program." (Gopalkrishna Dep. 71:20-72:8.) Furthermore, when asked if it is correct that when an email comes into the system, there's nobody from Yahoo! or a person that has to send the email as a text message, Mr. Gopalkrishna simply responded, "Correct. Yes." (Gopalkrishna Dep. 72:20-73:4.) ■

DECLARATION OF RANDALL A. SNYDER

[redacted]

39. [redacted] In Mr. Gopalkrishna's deposition, when asked if the "SMS Mail Alerts" servers store the telephone numbers of the customers who wanted to receive SMS service alerts, Mr. Gopalkrishna simply replied, "Correct." (Gopalkrishna Dep. 52:8-11.)

40. [redacted]

41. [redacted] When asked how a person who didn't know the credentials of an "SMS Mail Alerts" user who didn't have a Yahoo! Mail account and who had a cellular telephone number that was previously used for the account could make the texts stop, Mr. Gopalkrishna replied, "They would have to contact Yahoo customer care..." (Gopalkrishna Dep. 56:9-13.) Furthermore, when asked if

there was any way for a user to stop the Yahoo! "SMS Mail Alerts" service from sending text messages from the mobile phone itself, Mr. Gopalkrishna replied, "So that particular functionality, and as I understand it, never got implemented." (Gopalkrishna Dep. 107:13-17.)

42. According to the Plaintiff, after repeated calls to Yahoo!'s customer care department, he was unable to make the text messages from Yahoo!'s "SMS Mail Alerts" service stop. Moreover, the Plaintiff incurred the charges for receiving 12,997 unsolicited text messages from Yahoo! for which he never "opted-in" to receive.

43. ██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████

44. Cellular telephone numbers that have been deactivated and relinquished by cellular telephone subscribers and reassigned by a cellular telephone carrier to other cellular telephone subscribers are known as "recycled" numbers.

45. The Yahoo! "SMS Mail Alerts" application developed and used by Yahoo! treats the new owner of a recycled cellular telephone number the same as the previous owner of the number. Users of recycled cellular telephone numbers incur the cost to receive erroneous text messages and are provided with no explicit means to contact Yahoo! to make them stop. These cellular telephone subscribers never "opted-in" to receive any text messages and the Yahoo! "SMS Mail Alerts" application provides no way for the new user of a cellular telephone number to "opt-out" of receiving any of these text messages. And, the

Declaration of Randall A. Snyder

Yahoo! "SMS Mail Alerts" application provides no means to confirm that "mobile-terminated" text messages are, in fact, being sent to someone who has ever had any contact or any relationship with Yahoo!.

## THE TCPA AND AUTOMATIC TELEPHONE DIALING SYSTEMS

46. The TCPA allows autodialed calls… …if the called party expressly consents to their use." (see *FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, October 16th, 1992*).

47. The TCPA prohibits unsolicited voice and text calls to cellular telephone numbers using an ATDS, which the statute defines as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers."

48. The FCC has held that prohibitions under the TCPA apply equally to both voice calls and SMS text message calls to cellular telephone numbers (see *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, February 15th, 2012*).

49. Furthermore, the FCC has held that prohibitions under the TCPA apply to stored lists of telephone numbers as well as random or sequentially generated numbers. In fact, The United States Court for the Ninth Circuit quoted my name and expert report in the case of *Satterfield v. Simon & Schuster, Inc.* that "[t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically originate calls is a technical difference without a perceived distinction…" (see *Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion, June 19th, 2009, p. 7338*). Moreover, the FCC has held that prohibitions under the TCPA apply to lists of

DECLARATION OF RANDALL A. SNYDER

telephone numbers as well as random or sequentially generated numbers (see *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, January 4th, 2008*).

## CONCLUSIONS

50. Yahoo! is a member of the Mobile Marketing Association ("MMA"), the global organization which issues best practices, guidelines, rules and instructions for all companies involved in communicating with cellular telephone subscribers using SMS-based text messaging technology. As such, they are well aware of the MMA's best practices, guidelines, rules and instructions for all companies involved in communicating with cellular telephone subscribers using SMS-based text messaging technology.

51. Between September 8, 2012 and continuing through at least May 29, 2013, the Plaintiff received 12,997 unexpected and unsolicited text message calls on his cellular telephone from the Yahoo!'s short codes "92000" and "92500."

52. The Plaintiff received these text messages as a result of the previous owner of the cellular telephone number (215) 543-4361 registering that number with Yahoo's "SMS Mail Alerts" application program.

53. The Plaintiff at no time "opted-in" or in any way provided consent to receive any text messages at all from Yahoo!, as required by both the MMA and the TCPA.

54. There was no method provided in the received text messages that enabled the Plaintiff to "opt-out" of receiving any additional text messages on his cellular phone, as required by the MMA. In fact, the Plaintiff could not "opt-out" of receiving the text messages unless he contacted Yahoo!'s customer care department which, when called on multiple occasions, could not make the text messages stop. This caused the Plaintiff to incur charges for the

DECLARATION OF RANDALL A. SNYDER

receipt of 12,997 text messages for an application for which he did not "opt-in" and could not "opt-out."

55. Yahoo! did not at any time check whether the cellular telephone number used to send text messages to the Plaintiff was, in fact, the cellular telephone number of the intended message recipient. Cellular telephone numbers can be recycled and multiple cellular subscribers may use a particular cellular telephone number over time.

56. The MMA clearly states that mobile text message programs must include an "opt-in" mechanism (i.e., for express and knowing consent) and an "opt-out" mechanism by enabling a mobile text message recipient to simply reply "STOP" to a received mobile text message. The unsolicited text messages sent to cellular subscribers via the Yahoo! "SMS Mail Alerts" application contain no such express "opt-out" mechanism.

57. The MMA clearly states that all text message programs must adhere to all state and federal laws, rules and regulations.

58. The TCPA allows autodialed calls if the called party expressly and knowingly consents to their use. This means that the called party must consciously, intentionally or deliberately provide their phone numbers in order to expressly consent to being called by an ATDS.

59. The TCPA prohibits unsolicited voice and text calls to cellular telephone numbers using an ATDS, defined as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers."

60. The FCC has held that prohibitions under the TCPA apply equally to both voice calls and SMS text message calls to cellular telephone numbers (see *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278,

-22-

DECLARATION OF RANDALL A. SNYDER

February 15th, 2012, ¶4 and *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call")*.

61. The FCC has held that prohibitions under the TCPA apply to lists of telephone numbers as well as random or sequentially generated numbers (see *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, January 4th, 2008, ¶¶12-14*).

62. Yahoo!'s "SMS Mail Alerts" computerized application stores cellular telephone numbers in a list for subsequent use as the destination address to send automated SMS-based text messages.

63. Yahoo! automatically sends these text messages to cellular subscribers without human intervention.

64. Based on Mr. Gopalkrishna's testimony, my own analysis of the Yahoo! "SMS Mail Alerts" application program and the definition of an ATDS within the TCPA and accompanying regulations, I conclude that the equipment used by the Defendant has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers.

65. Based on Mr. Gopalkrishna's testimony, my own analysis of the Yahoo! "SMS Mail Alerts" application program and the definition of an ATDS within the TCPA and accompanying regulations, I conclude that the equipment used by the Defendant did, in fact, store a list of cellular telephone numbers to be called.

66. Based on Mr. Gopalkrishna's testimony, my own analysis of the Yahoo! "SMS Mail Alerts" application program and the definition of an ATDS within the TCPA and

DECLARATION OF RANDALL A. SNYDER

accompanying regulations, I conclude that the equipment used by the Defendant has the capacity to dial cellular telephone numbers (i.e., send SMS-based text messages) without human intervention.

67. Based on Mr. Gopalkrishna's testimony, my own analysis of the Yahoo! "SMS Mail Alerts" application program and the definition of an ATDS within the TCPA and accompanying regulations, I conclude that the equipment used by the Defendant did, in fact, dial cellular telephone numbers (i.e., send SMS-based text messages) without human intervention.

68. Based on Mr. Gopalkrishna's testimony, my own analysis of the Yahoo! "SMS Mail Alerts" application program and the definition of an ATDS within the TCPA and accompanying regulations, I conclude that the equipment used by the Defendant fulfills the definition of an ATDS within the TCPA.

**SUMMARY OF OPINIONS**

69. I can confidently and definitively state that Yahoo! operates and maintains an automatic telephone dialing system ("ATDS") as defined in the TCPA and accompanying regulations. Yahoo! is a VASP providing automated mobile text message application services using numeric addresses that are specially provisioned in the cellular operators' networks. As such, Yahoo! must use computer equipment to provide those services. Based on Mr. Gopalkrishna's testimony and my analysis of the Yahoo! "SMS Mail Alerts" application program, it is indisputable that automated computer equipment was used to send unsolicited mobile text messages to cellular telephone subscribers.

70. Moreover, in order for Yahoo! to provide the Yahoo! "SMS Mail Alerts" application program, it must store cellular telephone numbers to communicate with cellular telephone

-24-

DECLARATION OF RANDALL A. SNYDER

subscribers. Yahoo! obtains cellular telephone numbers from Yahoo! "SMS Mail Alerts" users and stores these numbers in a database to be called. Therefore, Yahoo!'s equipment clearly has the capacity to store telephone numbers to be called. And, in fact, not only does it have this capacity, it actually performs this function.

71. It is my expert opinion, based on my knowledge, experience, expertise, training and my review of the relevant documents and the facts described above, that the Defendant employed equipment which has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator or from a list of telephone numbers; the Defendant did, in fact, use such equipment; the Defendant employed this equipment which has the capacity to dial cellular telephone numbers without human intervention; the Defendant did, in fact, dial cellular telephone numbers without human intervention; and the equipment used by the Defendant was used to transmit unsolicited cellular text messages to cellular subscribers without prior express or knowing consent.

72. My opinions in this declaration are based upon extensive experience in the telecommunications industry, a detailed understanding of telecommunications systems, a detailed understanding of Short Message Service ("SMS") technology, and a detailed understanding of mobile marketing employing SMS technology. I hereby reserve the right to supplement or modify my opinions detailed in this report to the extent that new information is made available through discovery or other means.

DECLARATION OF RANDALL A. SNYDER

I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

Executed in Las Vegas, Nevada, on this 18th day of December 2013.

_Randall A. Snyder_

_____
Randall A. Snyder

DECLARATION OF RANDALL A. SNYDER

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BILL H. DOMINGUEZ, on behalf of himself** | ) | |
| **and all others similarly situated,** | ) | **CLASS ACTION** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **C. A. No. 13-1887** |
| | ) | |
| **YAHOO! INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**INDEX OF EXHIBITS TO**
**<u>DECLARATION OF RANDALL A. SNYDER</u>**

A.     Sample text message sent by Yahoo! to Plaintiff.

B.     T-Mobile USA text message detail records for Plaintiff's cellular telephone, September 8, 2012 through May 29, 2013.

C.     Common Short Code Association account for Yahoo!.

D.     Yahoo! Mail Alerts Product Overview (filed under seal).

E.     Declaration of Ajay Gopalkrishna in support of Defendant's Motion for Summary Judgment (Doc. 14-1).

F.     Deposition of Ajay Gopalkrishna (excerpts).

G.     Yahoo! SMS Subscription Gateway (filed under seal).

H.     Randall A. Snyder Curriculum Vitae.