**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated, | : : : | |
| | : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 2:13-cv-01887 |
| | : | |
| YAHOO!, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2016, upon consideration of defendant Yahoo!, Inc.'s Motion for Summary Judgment, and any response thereto, it is hereby ORDERED that said motion is GRANTED. Judgment is hereby entered in favor of defendant and against plaintiff.

BY THE COURT:

_____
Michael M. Baylson, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated, | : : : : | |
| Plaintiff, | : | |
| v. | : | C.A. No. 2:13-cv-01887 |
| YAHOO!, INC. | : : | |
| Defendant. | : : | |

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant Yahoo!, Inc. ("Yahoo!") hereby moves this Court for summary judgment on all of plaintiff's claims. In support of its Motion, Yahoo! relies upon the accompanying memorandum of law.

WHEREFORE, Defendant Yahoo!, Inc. respectfully requests that this Court grant its Motion and enter an order dismissing plaintiff's claims with prejudice.

Respectfully submitted,

Dated: January 22, 2016                    GREENBERG TRAURIG LLP


By:/s/ Brian T. Feeney
　　　　　Brian Feeney
　　　　　2700 Two Commerce Square
　　　　　2001 Market Street
　　　　　Philadelphia, PA 19103

　　　　　Ian C. Ballon (Admitted *pro hac vice*)
　　　　　1900 University Avenue
　　　　　5th Floor
　　　　　East Palo Alto, CA 94303

　　　　　Lori Chang (Admitted *pro hac vice*)
　　　　　1840 Century Park East
　　　　　Suite 1900
　　　　　Los Angeles, CA 90067

　　　　　*Attorneys for defendant*
　　　　　YAHOO! INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| BILL H. DOMINGUEZ, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A. No. 2:13-cv-01887 |
| YAHOO! INC. | : : | |
| Defendant. | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF YAHOO! INC.'S RENEWED MOTION**
**FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I . INTRODUCTION ................................................................................................ 1

II . PROCEDURAL BACKGROUND ..................................................................... 3

III . STATEMENT OF FACTS ................................................................................ 4

      A.      Yahoo's Email SMS Service Operated As An Email Forwarding Platform That Sent Text Message Alerts Only To A Single Mobile Number Inputted By A User ............................................................................... 4

      B.      Yahoo's Email SMS Service Lacked The "Present Ability" To Generate Phone Numbers Randomly, Sequentially, Or In Any Other Way ......................... 5

      C.      Yahoo's Email SMS Service Lacked The "Latent Ability" To Generate Phone Numbers Randomly, Sequentially, Or In Any Other Way ......................... 6

IV . ARGUMENT ................................................................................................... 8

      A.      Legal Standard ............................................................................................ 8

      B.      Yahoo Is Entitled To Summary Judgment Because The Email SMS Service Did Not Have Either The "Present" Or "Latent" Capacity Under The Statutory Definition Of An Automatic Telephone Dialing System ................. 9

      C.      Dominguez Waived The Argument That The Email SMS Service's Latent Or "Potential" Capacity Makes It An ATDS ...................................................... 13

V . CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACA Int'l v. F.C.C.*,
  No. 15-1211 [Dkt. 1585568] (D.C. Cir. 2015) ..........................................................3

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................9

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................8, 9

*Dominguez v. Yahoo, Inc.*,
  __F. App'x.__, 2015 WL 6405811 (3d Cir. Oct. 23, 2015) ........................... *passim*

*Dominguez v. Yahoo! Inc.*,
  8 F. Supp. 3d 637, 643 (E.D. Pa. 2014) ......................................................1, 10, 13

*First Nat. Bank of Pennsylvania v. Lincoln Nat. Life Ins. Co.*,
  824 F.2d 277 (3d Cir. 1987)......................................................................................9

*Schmidheiny v. Weber*,
  285 F. Supp. 2d 613 (E.D. Pa. 2003) ........................................................................9

*Skretvedt v. E.I. DuPont De Nemours*,
  372 F.3d 193 (3d Cir. 2004).....................................................................................13

**Federal Statutes**

47 U.S.C. § 227, *et seq.*............................................................................... *passim*

Federal Rule of Civil Procedure
  56(a) ...........................................................................................................................9
  56(c)(1) .......................................................................................................................9
  56(e) ...........................................................................................................................9

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the
  Telephone Consumer Protection Act of 1991*,
  30 FCC Rcd. 7961(July 10, 2015) .............................................................. *passim*

H.R. Rep. 102-317, at 10 (1991)..............................................................................10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. INTRODUCTION

The sole issue for this court to determine on remand is whether Yahoo's Email SMS Service had the *capacity* to generate telephone numbers randomly or sequentially and thus fell within the statutory definition of "automatic telephone dialing system" ("ATDS") under the Telephone Consumer Protection Act ("TCPA"), when it was in use prior to 2013. This Court previously ruled that pursuant to the plain terms of the statute, an ATDS must have "the capacity to 'use a random or sequential number generator to store or produce telephone numbers and then send a text message to those numbers' as required by the TCPA," and granted Yahoo summary judgment because the plaintiff ("Dominguez") failed to offer evidence to dispute that Yahoo's "service could not randomly or sequentially generate telephone numbers, but only sent messages to a user that had authorized them and only when that user received an email" that was forwarded by the Email SMS Service to the mobile number inputted by the user. *Dominguez v. Yahoo! Inc.*, 8 F. Supp. 3d 637, 643 (E.D. Pa. 2014) (Dkt. 55). Dominguez appealed and sought reversal on a single point of law. Plaintiff expressly did not dispute that Yahoo's service had no capacity to generate random or sequential telephone numbers. Rather, Plaintiff argued that the Email SMS Service qualified as an ATDS so long as it merely stored numbers and sent text messages one after the other—even if the system neither generated telephone numbers randomly or sequentially nor stored randomly or sequentially generated telephone numbers.

The Third Circuit agreed with this Court and rejected Dominguez's interpretation of the statute. Following the FCC's intervening 2015 declaratory ruling clarifying the definition of

ATDS,[1] the Third Circuit held that, consistent with the statute, the FCC's orders "hold that an autodialer must be able to store or produce numbers that *themselves* are randomly or sequentially generated," and contrary to Dominguez's argument, the FCC did not "read out the 'random or sequential number generator' requirement" set forth in the TCPA. *Dominguez v. Yahoo, Inc.*, __F. App'x.__, 2015 WL 6405811, at *2, 3 n.2 (3d Cir. Oct. 23, 2015) (italics in original). Further, the Third Circuit construed the 2015 FCC Ruling as having clarified that "capacity" means not just the "present ability" but also "latent 'capacity'" to store or produce numbers to be called, using a random or sequential number generator. *Dominguez*, 2015 WL 6405811, at *3. Because the FCC guidance was issued after this Court awarded summary judgment to Yahoo (and indeed after briefing and argument before the Third Circuit), the Third Circuit found that the summary judgment record did not sufficiently address the issue of "capacity" under the statute, as that term has since been "clarified" by the FCC. And accordingly, the Third Circuit vacated this Court's prior summary judgment ruling and remanded for further briefing and factual development on this narrow issue. *Id.* at 4.

Yahoo hereby renews its summary judgment motion based on evidence demonstrating that the Email SMS Service never had *any* capacity whatsoever, whether present or potential, active or latent, to generate numbers randomly or sequentially, or in any way at all. The Email SMS Service (now discontinued) was a proprietary platform designed and developed by Yahoo to perform the sole function of forwarding an email addressed to a Yahoo user as a text message alert to a single mobile telephone number manually inputted and manually verified by that user. The Email SMS Service also could not be modified or used with any other platforms or third-party applications (such as Microsoft Excel, as suggested by Dominguez) to store or produce

---

[1] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2015 FCC Ruling"), 30 FCC Rcd. 7961(July 10, 2015).

numbers, using a random or sequential number generator, and therefore had no "latent capacity." Accordingly, it is undisputed that the Email SMS Service was not an ATDS, and summary judgment should therefore be entered for Yahoo.

## II. PROCEDURAL BACKGROUND

Plaintiff filed his complaint on April 10, 2013. *See* Dkt. 1. Yahoo answered plaintiff's complaint on June 10, 2013. *See* Dkt. 10. On June 18, 2013, Yahoo filed a motion for summary judgment on the grounds that the Email SMS Service at issue in this lawsuit was not an ATDS as that term is defined by the TCPA under 47 U.S.C. § 227 (a)(1). Dkt. 10. Plaintiff filed his opposition to Yahoo's motion for summary judgment on June 26, 2013 [Dkt. 14] and Yahoo filed its reply on February 17, 2014. Dkt. 47. The court held oral argument on Yahoo's motion on March 11, 2014, and on March 20, 2014, the court issued its ruling granting Yahoo's motion for summary judgment finding that Yahoo's Email SMS Service was not an ATDS. Dkt. 56. On March 27, 2014, plaintiff filed a notice of appeal. Dkt. 58.

After the parties fully briefed the appeal and presented oral argument to the Third Circuit on November 21, 2014, the FCC, on July 10, 2015, issued a ruling that "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities" (2015 FCC Ruling, ¶ 16), however "there must be more than a theoretical potential that the equipment could be modified to satisfy the 'autodialer' definition." *Id.*, at ¶ 18.[2]

On October 23, 2015, the Third Circuit issued its decision [Dkt. 65] vacating the court's

---

[2] The 2015 FCC Ruling is the subject of an appeal pending in the D.C. Circuit. *See ACA Int'l v. F.C.C.*, No. 15-1211 [Dkt. 1585568] (D.C. Cir. 2015). One of the challenges to the ruling is that the FCC's conclusion that capacity means "potential" capacity is contrary to the statute's language, which suggests present capacity ("using" a number generator). *Id.* at 22-30. Although we agree with those challenging the ruling on those grounds, we are not asking the Court to reach that issue because the Email SMS Service had neither the present nor latent (or potential) capacity to meet the statutory definition.

summary judgment ruling in light of the intervening FCC ruling and remanding for further proceedings to "more fully" address "whether Yahoo's equipment meets the statutory definition," specifically on the issue of "capacity" as clarified by the FCC. *Dominguez*, 2015 WL 6405811, at *3. While the FCC explained that "capacity" under the TCPA "is not limited to [the equipment's] current configuration but also includes its potential functionalities," (2015 FCC Ruling, ¶ 16), the Third Circuit, finding that the FCC's orders were "hardly a model of clarity," construed that "capacity" under the FCC's broader definition means not just the "present ability" but also "latent 'capacity.'" *Dominguez*, 2015 WL 6405811, at *3. In "remanding for further briefing and factual development (if appropriate)," the Third Circuit also acknowledged that "Yahoo asserts in a footnote of its brief that both parties agree it is the equipment's 'present capacity' that is relevant to the statutory definition," and instructed that "the District Court may consider on remand whether Dominguez properly preserved this issue (and how any 'waiver' might be affected by the intervening 2015 FCC Ruling)." *Id.*

### III. STATEMENT OF FACTS

**A.** **Yahoo's Email SMS Service Operated As An Email Forwarding Platform That Sent Text Message Alerts Only To A Single Mobile Number Inputted By A User**

Yahoo is an internet company that is widely known for its free consumer services, including personalized news and financial websites, Yahoo Messenger, Yahoo search and the Yahoo email client and associated protocol provided by Yahoo. Yahoo email accounts are offered free of charge and can be obtained and used by anyone who has registered as a user with a Yahoo ID. Declaration of Gareth Shue ("Shue Decl.") ¶ 3.

Yahoo formerly offered Yahoo email account holders a service that allowed them to forward new, incoming emails to their mobile phone as text message alerts (the "Email SMS Service"). *Id.* ¶ 4. In the days prior to widespread access to smartphones, this service allowed

users to be notified when they received new emails, including sender and subject information, without logging into a computer. *Id.* Text message alerts sent via the Email SMS Service included the sender's email address, the subject line, text from the body of the incoming email, and a link to the login page for Yahoo Mail (to allow the user to login to his or her email account to read the email). *Id.* ¶ 7.

The Email SMS Service was not capable of sending a text message alert unless a Yahoo user affirmatively opted in and instructed the service to send messages to his or her mobile phone by manually entering the user's number directly into the system. *Id.* ¶ 5. The Email SMS Service was a free service that a user could manually set up in order to receive text message alerts for incoming emails based on specific criteria (or "rules") defined by the user. *Id.* ¶ 4, 5. A user would not have been able to receive text message alerts via the Email SMS Service without checking a box to opt in to receiving these messages, then manually inputting his or her mobile telephone number, and verifying the number. *Id.* ¶ 5.

The Email SMS Service was discontinued in October 2013. *Id.* ¶ 4.

**B.**     <u>**Yahoo's Email SMS Service Lacked The "Present Ability" To Generate Phone Numbers Randomly, Sequentially, Or In Any Other Way**</u>

The Email SMS Service did not and could not generate telephone numbers randomly, sequentially, or in any other manner. *Id.* ¶ 9. Nor was it capable of sending text messages to randomly or sequentially generated telephone numbers because it was designed only to forward an incoming email to a single mobile number manually inputted by a Yahoo user. *Id.* Neither Yahoo nor any Yahoo user could have used the Email SMS Service to create, generate, or produce telephone numbers in any way, including generating random or sequential numbers. *Id.* For example, the Email SMS Service never had any capability to generate and send messages to random phone numbers within a specified area code or geographic location, or to generate and

send messages to sequential blocks of phone numbers such as (111) 111-1111, (111) 111-1112, (111) 111-1113, and so on. *Id.* The Email SMS Service never had the ability to generate numbers in any way at all because it was not designed to perform this function. *Id.*

Further, it was not possible for the Email SMS Service to send a single text message alert to more than a single telephone number at a time for a user account. *Id.* ¶ 11. In other words, the Email SMS Service could not have been set up by a user to send text message alerts to more than one mobile number at a time. *Id.* The Email SMS Service was capable of sending a text message alert only to the single mobile telephone number the Yahoo user most recently entered and verified. *Id.* Neither Yahoo nor a Yahoo user could set up the Email SMS Service to send a text message alert as a "mass text" or "text blast" because the service was designed and built to send only a single text message alert containing part or all of a single email message (based on the 160 character limit for SMS messages) to a single mobile number inputted by a Yahoo user. *Id.* In other words, the Email SMS Service was a one-to-one system that was capable of sending only *one* text message alert for each incoming email, to *one* mobile telephone number entered by the Yahoo user. *Id.*

C.   **Yahoo's Email SMS Service Lacked The "Latent Ability" To Generate Phone Numbers Randomly, Sequentially, Or In Any Other Way**

The Email SMS Service was custom-designed and developed by Yahoo engineers to perform a single function: to send a text message alert of an incoming email received by a Yahoo user to a single mobile telephone number manually inputted and verified by the user. *Id.* ¶ 10. Yahoo never built into the platform any capability or functionality, whether active or latent, that would have or could have enabled it, either on its own or paired with any other software or device, to store or produce numbers generated randomly, sequentially, or in any other fashion. *Id.* Indeed, there would have been no reason to do so because the sole purpose of the Email SMS

Service was to forward emails received by a Yahoo user to his or her mobile device if, and only if, that Yahoo user (1) manually elected to use the Email SMS Service, and (2) manually entered and verified a single, specific telephone number to receive such text message alerts. *Id.* Number generation technology was not a part of the Email SMS Service because the service did not require number generation technology. *Id.* The users provided the numbers.

The Email SMS Service was not connected to any server, system, or database that had any capacity to generate phone numbers. *See id.* ¶¶ 13-24. The Email SMS Service operated with a proprietary database called the "MSDB," Yahoo's proprietary user database (the "UDB"), and Yahoo's proprietary SMS gateway known as "Athena." *Id.* ¶ 13. The MSDB, which is part of Yahoo Mail, stored the "rules" that the Yahoo user manually created when setting up the Email SMS Service. *Id.* The UDB stored the mobile number manually entered by the user for use by the Email SMS Service. *Id.* Athena transmitted text messages sent via the Email SMS Service to the user's mobile carrier which in turn delivered the text message alert to the user's mobile device. *Id.* None of these platforms had any capacity to generate numbers because the MSDB and UDB were simply databases that stored data, and Athena acted merely as a funnel for delivery of the text message alert to the mobile carriers, performing only backend functions to lookup the mobile number inputted by the user and truncate the email (if necessary) to comply with the 160 character limit for SMS messages. *See id.* ¶¶ 13-24. Accordingly, because the functions performed by and built into the MSDB, the UDB, and Athena were limited in the manner described above and more fully in the Declaration of Gareth Shue, none of these platforms had any active or latent capacity to generate telephone numbers. *See id.*

Moreover, the Email SMS Service, including the MSDB, UDB, and Athena, was not capable of incorporating or using any "off the shelf" dialing system or third-party application or

equipment, including any system or application that could generate random or sequential telephone numbers. *Id.* ¶ 24. It was also not possible for Yahoo or a Yahoo user or any other third party to write a program to modify the Email SMS Service, including the MSDB, UDB, and Athena (which was not connected to any user interface), to send text message alerts to randomly or sequentially generated telephone numbers (whether stored or produced by the Email SMS Service) because the Email SMS Service was designed to only send text message alerts of incoming emails to the mobile number inputted and verified by a Yahoo user (i.e., the number to be called), and not to randomly or sequentially generated phone numbers. *See id.* ¶¶ 23-24.

Indeed, Yahoo engineers had no reason to design the Email SMS Service to enable it to generate random or sequential telephone numbers, or to use a third-party random or sequential number generator, because the Email SMS Service was custom-made by Yahoo engineers for the sole purpose of allowing Yahoo users to forward personal emails (in the form of text message alerts) to their mobile phones at the telephone numbers users provided, and not to randomly or sequentially generated telephone numbers. *Id.* ¶ 25. Yahoo engineers typically develop Yahoo properties, like the Email SMS Service, to perform only the technical functions necessary for the property to achieve its intended objective consistent with specific instructions from other Yahoo teams including product and security teams. *Id.* Yahoo engineers typically do not develop Yahoo properties with latent functions or the ability to perform tasks that are not essential to the product's stated purpose, and this was true for the Email SMS Service. *Id.*

## IV. ARGUMENT

### A. <u>Legal Standard</u>

A summary judgment motion is intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.

R. Civ. P. 1). Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating the lack of a genuine dispute. *See First Nat. Bank of Pennsylvania v. Lincoln Nat. Life Ins. Co.*, 824 F.2d 277, 280 (3d Cir. 1987). The burden is discharged by "'showing' . . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1).

Once the moving party discharges its burden, the burden shifts to the opposing party to establish a genuine issue of material fact as to an essential element of its claim. *Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(e). Not every factual dispute defeats summary judgment; the requirement is that "there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Id.* at 248. The nonmoving party must present probative evidence to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Schmidheiny v. Weber*, 285 F. Supp. 2d 613, 627-28 (E.D. Pa. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Here, plaintiff's TCPA claim fails as a matter of law because the undisputed facts establish that the messages at issue were not sent using an ATDS, and plaintiff therefore cannot prove an essential element of his claim.

**B.**    **Yahoo Is Entitled To Summary Judgment Because The Email SMS Service Did Not Have Either The "Present" Or "Latent" Capacity Under The Statutory Definition Of An Automatic Telephone Dialing System**

Summary judgment should be granted because the Email SMS Service did not have the capacity to generate phone numbers randomly, sequentially, or in any way at all, and therefore was not an ATDS.

The TCPA prohibits any person from using an ATDS to make a non-emergency call to a mobile number without prior express consent, and defines ATDS as "equipment which has the capacity -- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The Third Circuit agreed with this Court that an ATDS "must be able to store or produce numbers that *themselves* are randomly or sequentially generated," and remanded on a single narrow issue—whether Yahoo's Email SMS Service had the requisite capacity under the statute to store or produce numbers to be called, using a random or sequential number generator. *Dominguez v. Yahoo Inc.*, __ F. App'x __, Case No. 14-1751, 2015 WL 6405811, at * 2-4 (3d Cir. Oct. 23, 2015) (italics in original).

Moreover, just as this Court did, the Third Circuit rejected Dominguez's argument that "sequential" refers to the manner in which numbers are stored and called, as opposed to the generation of numbers in sequential order. *See id.* at *3 ("[W]e agree with the District Court's definition of 'random or sequential' number generation (*i.e.*, the phrase refers to the numbers themselves rather than the manner in which they are dialed) and its holding that the statutory definition does in fact include such a requirement . . . ."); *see also Dominguez v. Yahoo! Inc.*, 8 F. Supp. 3d 637, 642 (E.D. Pa. 2014) (rejecting plaintiff's "definition of the term 'sequence' . . . since it focuses on the manner in which text messages are sent, not the way in which the numbers are generated," and adopting "the definition of 'sequential number generation'" as "'(for example) (111) 111-1111, (111) 111-1112, and so on'").[3]

---

[3] The Court's construction of "sequential" is supported by legislative history. In describing ATDSs, the House report found that

> these systems are used to make millions of calls every day. Each system has the capacity to automatically dial as many as 1,000 phones per day. Telemarketers often program their systems to dial *sequential* blocks of telephone numbers,

As to the meaning of "capacity," the Third Circuit construed the 2015 FCC Ruling as having "clarified that neither 'present ability' nor the use of a single piece of equipment is required," and "[t]hus, so long as the equipment is part of a "system" that has the latent "capacity" to place autodialed calls, the statutory definition is satisfied" (even if the equipment is "'not presently used for that purpose'"). *Dominguez*, 2015 WL 6405811, at *3 (citing the 2015 FCC Ruling, 2015 WL 4387780, at *5); *see also* 2015 FCC Ruling ¶ 16 (explaining that "capacity" under the TCPA "is not limited to [the equipment's] current configuration but also includes potential functionalities"). Apart from the Third Circuit's ruling in this case, no other court in this jurisdiction has ruled on the meaning of "capacity" following the FCC's issuance of its 2015 declaratory ruling.

Here, there can be no dispute that Yahoo's Email SMS Service lacked <u>any</u> capacity— whether present or potential, active or latent—to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

The Email SMS Service lacked the "<u>present ability</u>" to either *generate* phone numbers, whether randomly, sequentially, or in any other way, or send text message alerts to random or sequentially generated telephone numbers because it was designed solely for the purpose of forwarding a single text message alert for each incoming email, to a single mobile number associated with a user's account. Shue Decl., ¶ 9. The Email SMS Service also did not and could not *store* randomly or sequentially generated numbers "to be called" because it was designed to store only those mobile telephone numbers manually inputted and verified by a user for purposes of receiving text message alerts. *Id.* ¶ 11. Moreover, the Email SMS Service was capable of

---

which have included those of emergency and public service organizations, as well as unlisted telephone numbers.

H.R. Rep. 102-317, at 10 (1991) (emphasis added).

sending a text message alert only to the most recent mobile telephone number the Yahoo user entered and verified, and to no more than one mobile number at a time for each user account. It therefore could not be used to send "mass texts" to randomly generated numbers or a sequential block of numbers. *Id.*  Accordingly, the Email SMS Service lacked the "present" capacity to store *or* produce numbers, using a random or sequential number generator, and to dial such numbers. *Id.* ¶ 12.

The Email SMS Service also lacked the <u>"latent" capacity</u> to store or produce telephone numbers to be called, using a random or sequential number generator, because it could not be configured or modified to send text message alerts of emails received to randomly or sequentially generated numbers, as opposed to a mobile number inputted by the email recipient (which would completely undermine the purpose of the service). The Email SMS Service was not capable of integrating any Yahoo property or third-party application (such as Microsoft Excel, as suggested by plaintiff) that could have performed these functions.  Nor could the Email SMS Service be used in conjunction with any device or hardware that would have enabled it to send text message alerts to randomly or sequentially generated numbers. *Id.* ¶ 24. In other words, no hidden or latent feature could have been "activated" to give the Email SMS Service the requisite capacity under the statute.

Similarly, the Email SMS Service could not have been modified through software changes or updates (or otherwise to bring it within the FCC's interpretation of "capacity") to send text message alerts to randomly or sequentially generated phone numbers, and at the same time achieve its intended purpose of alerting Yahoo users to incoming emails because the Email SMS Service was designed to send text message alerts to the mobile phone number manually entered and verified by a user. Shue Decl., ¶ 24.

Therefore, the Email SMS Service lacked either the "present" or "latent" capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers, and thus, summary judgment should be granted because the text messages at issue were not sent using an ATDS.

## C.      Dominguez Waived The Argument That The Email SMS Service's Latent Or "Potential" Capacity Makes It An ATDS

Just as Dominguez has never argued or offered any evidence to show that Yahoo's Email SMS Service had the *present* capacity to generate numbers randomly or sequentially, as the Third Circuit recognized, plaintiff also did not argue that the Email SMS Service's "latent" or "potential" capacity—as opposed to its "present capacity"—made the Email SMS Service an ATDS under the TCPA; indeed, he tacitly agreed with Yahoo that only the platform's "present capacity" was relevant. *See Dominguez*, 2015 WL 6405811, at *3.

In his appeal, plaintiff argued that this court "appl[ied] an erroneous and excessively narrow definition of 'automatic telephone dialing system' to the record evidence" (Opening Brief at 1), but he did *not* argue for reversal based on the potential capabilities of the Email SMS Service, even though he was aware that other district courts had "drawn a distinction between a system's present capacity (as currently designed) and its potential capacity." *See Dominguez*, 8 F. Supp. 3d at 637, 641 n.4. Plaintiff did not raise latent capacity on appeal because there was no factual support for it in this case. Thus, the fact that the FCC recently clarified that it interprets "capacity" as not limited to "present ability," but also includes an equipment's "potential functionalities" (2015 FCC Ruling, ¶¶ 15, 16), should not provide grounds for plaintiff to now make an argument that he could have, but chose not to, raise on appeal. Plaintiff's argument that the Email SMS Service's "potential functionalities" renders it an ATDS should be considered waived. *See Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 203 (3d Cir. 2004) (refusing to

consider new arguments raised for the first time on remand that were not raised in a prior appeal) (citing *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798, 802 (3d Cir. 1987) ("considerations of finality and efficiency mandate that [plaintiff] be barred from relitigating [an] issue on a different theory factually inconsistent with the one she elected to pursue").

Accordingly, plaintiff is precluded from arguing that the Email SMS Service's "potential" capacity rendered it an ATDS. However, even if the argument was not waived, it is undisputed as set forth in section IV(B), that the Email SMS Service has no latent or potential capacity to generate telephone numbers randomly or sequentially. On either or both grounds, Yahoo is entitled to summary judgment.

## V. CONCLUSION

For the foregoing reasons, Yahoo's summary judgment motion should be granted.

Respectfully submitted,

Dated:  January 22, 2016                    GREENBERG TRAURIG LLP

By:  /s/ Brian T. Feeney
                         Brian Feeney
                         2700 Two Commerce Square
                         2001 Market Street
                         Philadelphia, PA 19103

                         Ian C. Ballon (Admitted *pro hac vice*)
                         1900 University Avenue
                         5th Floor
                         East Palo Alto, CA 94303

                         Lori Chang (Admitted *pro hac vice*)
                         1840 Century Park East
                         Suite 1900
                         Los Angeles, CA 90067

                         *Attorneys for defendant*
                         YAHOO INC.

## CERTIFICATE OF SERVICE

I, Brian T. Feeney, attorney for Defendants, hereby certify that on January 22, 2016, I served a true and correct copy of Yahoo! Inc.'s Renewed Motion for Summary Judgment and Memorandum in Support, together with all exhibits via this Court's Electronic Court Filing System upon the following counsel of record:

James A. Francis, Esquire
Mark D. Mailman, Esquire
Geoffrey Baskerville, Esquire
David A.Searles, Esquire
Francis & Mailman, P.C.
Land Title Building – 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

*Attorneys for Plaintiff*

/s/ Brian T. Feeney
Brian T. Feeney, Esquire